# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DUILIO ANGELINI** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 17-4133** |
| **v.** | : | |
| | : | |
| **U.S. FACILITIES, INC.** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                      JUNE 27, 2018

# MEMORANDUM OPINION

## INTRODUCTION

Duilio Angelini ("Plaintiff") filed an amended employment discrimination complaint against his former employer, U.S. Facilities, Inc. ("Defendant"), in which he asserts claims of unlawful discrimination and hostile work environment based on violations of 42 U.S.C. §1981 ("§1981"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. §623 *et seq.* (the "ADEA"); the Pennsylvania Human Relations Act, 43 P.S. §951 *et seq.* (the "PHRA"); and the Philadelphia Fair Practices Ordinance, §9-1100 *et seq.* (the "Philadelphia Ordinance"). [ECF 4]. Plaintiff has also asserted state law claims for wrongful discharge under the Pennsylvania Whistleblower Law, 43 Pa. Cons. Stat. §1421, and Pennsylvania common law.

Before this Court is Defendant's *motion to dismiss* the amended complaint for failure to state a claim upon which relief can be granted filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). [ECF 6]. Plaintiff has opposed the motion. [ECF 11]. The issues presented have been fully briefed and, therefore, this matter is ripe for disposition. For the reasons set forth herein, Defendant's motion to dismiss is granted, *in part*, and denied, *in part*.

**BACKGROUND**

When ruling on a motion to dismiss, a court must accept as true all the factual allegations in the operative complaint, and construe the complaint in the light most favorable to the non-movant. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Here, Plaintiff's amended complaint contains seven counts wherein Plaintiff avers that Defendant; *to wit*: unlawfully discriminated against him because of his race and/or that Defendant's conduct toward Plaintiff constituted a hostile work environment in violation of §1981 and Title VII, (Counts I and II, Am. Compl. at ¶¶38-53); unlawfully discriminated against him based on his age and/or that Defendant's conduct toward Plaintiff constituted a hostile work environment, in violation of the ADEA, (Count III, *id.* at ¶¶54-65); unlawfully discriminated against Plaintiff based on his age, race, religion, and ethnicity/ancestry in violation of his rights under the PHRA and the Philadelphia Ordinance, (Counts IV and V, *id.* at ¶¶66-75); unlawfully terminating Plaintiff's employment in retaliation for having made reports of wrongdoing in violation of the Pennsylvania Whistleblower Statute and Pennsylvania common law. (Counts VI and VII, *id.* at ¶¶115-26). Briefly, the relevant facts in Plaintiff's amended complaint are as follows:

> Plaintiff is a Caucasian male of Italian American descent and a devout Catholic. (Am. Comp. ¶2). At the time of his firing in February 2017, Plaintiff was "over the age of forty." (*Id.*).[1] Defendant is alleged to be a minority business enterprise which holds a contract to manage certain properties owned by the City of Philadelphia (the "City"). (*Id.* at ¶76). In particular, Defendant provided management services for three buildings owned by the City; *to wit*: the Criminal Justice Facility (the "CJC"); the Municipal Services Building (the "MSB"); and the One Parkway Building (the "OPB") (collectively, the "Triplex"). (*Id.*). At all times relevant to Plaintiff's claims, Plaintiff reported directly to Chief Operating Officer ("COO") Jim Dorris, who in turn reported to James Dobrowolski, Defendant's President and CEO. (*Id.* at ¶18).

---

[1] Plaintiff does not provide his exact age at the time of his firing, other than alleging that he was over the age of forty. (*Id.* at ¶2). However, Plaintiff also alleges that he is "[n]ow sixty years of age. . . ." (*Id.*).

### _Facts Relevant to Plaintiff's Discrimination Claims_

On December 17, 2002, during a phone call in which Plaintiff was offered a job with Defendant, Defendant's then-COO, Wendall Ashley, asked him "if he got along with minorities" and if he "got along with black people." (_Id_. at ¶12). Plaintiff responded that he got along with all people. (_Id_.). Shortly after this phone call, on December 19, 2002, Plaintiff began working for Defendant as a Support Supervisor. (_Id_. at ¶13). Plaintiff proceeded through the ranks with Defendant and became the Building Manager at the CJC, on January 15, 2007. (_Id_.). According to Plaintiff, he was transferred to the CJC because the performance of the previous building manager (an African American) was substandard and there was a need to repair relationships with City officials. (_Id_.).

Sometime at the end of December 2002, Plaintiff had an initial in-person meeting at the MSB. (_Id_. at ¶14). During the meeting, Mr. David Rivers (an African American), a vice president for one of Defendant's subcontractors, turned to one of Defendant's Building Managers, Mr. Herman Woods (an African American), pointed to Plaintiff and Mr. Griff Reigard (both Caucasians), and made the comment: "I think we're going to have problems with those two at the end of the table." (_Id_.).

On February 5, 2016, Plaintiff was formally notified of his promotion from Building Manager at the CJC (a position he had held since 2007) to Project Manager of the Triplex. (_Id_. at ¶15). The promotion became effective on February 29, 2016. (_Id_.).

During his employment, Plaintiff had to interact with Ms. Carmen Diaz Rosario, a Puerto Rican female, and Manager of the MSB. (_Id_. at ¶19). Without any specificity as to timing or substance, Plaintiff alleges that he "had to endure Ms. Rosario's negative comments regarding Italians, whether directed at himself (sic) or directed at a Philadelphia public official." (_Id_.). Plaintiff interacted with Mr. Ed Siegler, Assistant Project Manager, who also made fun of Plaintiff's Italian heritage. (_Id_. at ¶22).

Plaintiff also interacted with Mr. Zachary Jones, an African American, Maintenance Manager. (_Id_. at ¶20). Without any specificity, Plaintiff alleges that Mr. Jones repeatedly directed derogatory comments about Italians to Plaintiff, asserting that "all Italians are related and alike, even smelling alike." (_Id_.). Mr. Jones also allegedly "constantly used the offensive and derogatory term 'Mamaluke' to refer to Plaintiff specifically and Italians in general." (_Id_.). Mr. Jones "denigrate[d] Plaintiff's religion with a host of negative and disparaging statements, including his statement that 'All Catholics drink Jesus' juice.'" (_Id_.). Mr. Jones made fun of and criticized Plaintiff's maintenance of personal religious objects in his office space. (_Id_.). Plaintiff also alleges that Mr. Jones' conduct was "consistent with the Anti-Catholic tone set by Mr. Karl Letterman, Project Manager of the Triplex." (_Id_.).

During the course of his employment, Plaintiff also interacted with Ms. Susan Laramore, an African American Human Resources Manager. (*Id*. at ¶24). According to Plaintiff, Ms. Laramore "exhibited racial hostility towards Plaintiff, repeatedly attempting to undermine Plaintiff in his work." (*Id*.). Sometime in 2012, Plaintiff alleges that he was verbally abused and physically intimidated during an evaluation attended by Project Manager, Kevin McKinney, and Assistant Project Manager Christian Holland (both African Americans). (*Id*. at ¶26). The incident was reported to Ms. Laramore and Vice President Karl Letterman, but no action was taken. (*Id*.).

On January 9, 2017, Plaintiff was called to a meeting with CEO Dobrowolski and Mr. Dorris, where Plaintiff was told that there had been complaints against him about his leadership and management style. (*Id*. at ¶¶29, 31). Plaintiff was offered the choice of either remaining as Triplex Project Manager to be shadowed by Mr. Dorris, or to be demoted to Building Manager for the CJC. (*Id*. at ¶31). At or about the same time, CEO Dobrowolski asked Plaintiff how old he was and how much longer he wanted to work. (*Id*. at ¶32).

On January 31, 2017, Plaintiff attended another meeting with CEO Dobrowolski and Mr. Dorris and was asked whether he would accept a demotion, with the option of remaining as Project Manager no longer being offered. (*Id*. at ¶33). Plaintiff protested that he was being handled in a fashion fundamentally different than others. (*Id*.). He subsequently took approved vacation to tend to the health of his wife. (*Id*. at ¶34). On February 3, 2017, while on this approved vacation, Plaintiff was fired, (*id*.), and was replaced by someone younger in age. (*Id*. at ¶37).

### *Facts Relevant to Plaintiff's Whistleblower/Wrongful Discharge Claims*

Plaintiff commenced his employment with Defendant on December 19, 2002. (*Id*. at ¶86). In late December 2013 and January 2014, when he was Building Manager for the CJC, Plaintiff reported life safety issues with respect to the lack of elevator preventive maintenance. (*Id*. at ¶91). A memo was sent to Project Manager, Mr. Kevin Smith, with copies to Assistant Project Managers, Mr. Edward Siegler and Ms. Carmen Diaz-Rosario, and Maintenance Manager, Mr. Zachary Jones. (*Id*.). The memo reflected that necessary work had not been completed. (*Id*.). Plaintiff told Mr. Smith and Mr. Siegler that this was a life safety issue and that those working at the Triplex were concerned about the fact that the elevators were not maintained and were repeatedly out of order. (*Id*.).

In October 2013, Defendant awarded its elevator maintenance contract to Schindler Elevator Corporation ("Schindler"). (*Id*. at ¶100). Defendant's John Lontz was the contract manager and his brother, Mr. Robert Lontz, worked for Schindler as the Elevator Superintendent. (*Id*.). Shortly after the contract was awarded, Plaintiff brought this alleged conflict of interest to the attention of Project Manager, Mr. Kevin Smith. (*Id*.). Mr. Smith agreed with Plaintiff that this was a conflict, but advised Plaintiff to keep his mouth shut or be fired. (*Id*.).

Plaintiff contends that Schindler's services were substandard, late, and overly expensive. (*Id*.). On May 29, 2014, Plaintiff advised senior management in writing that Schindler mechanics were not updating elevator log books as required by the City. (*Id*. at ¶93). On October 8, 2014, Plaintiff advised senior management in writing that "I personally don't believe that Schindler spends enough time at CJC on PM (preventative maintenance) of elevators/escalators, just from the fact that every time we do have an issue, they're at OPB or MSB." (*Id*. at ¶94). On January 5, 2015, Plaintiff complained to senior management in an email about the lack of elevator preventative maintenance by Schindler. (*Id*. at ¶95). Plaintiff's email included his criticism of Schindler's inefficiency: "Schindler has taken a 6 to 8 hour job, and has turned it into a one week project." (*Id*. at ¶96). This email was copied to City Department of Public Property employee, Jerry Merrigan. (*Id*. at ¶95). Defendant's John Lontz responded "Let's be mindful of our emails. Jerry doesn't need to see all this." (*Id*.). Plaintiff alleges that his repeated protests mounted to the point that Mr. Siegler told elevator subcontractors to withhold information from Plaintiff "because we can't let Lou know what's going on." (*Id*. at ¶98).

Plaintiff allegedly complained repeatedly to Mr. Smith and Mr. Siegler that Schindler had stopped completing mandatory preventative maintenance. (*Id*. at ¶101). Elevator issues with Schindler continued for the remainder of 2015 and into April 2016. (*Id*. at ¶102).

The contract with Schindler was terminated in July 2016. (*Id*.). On August 4, 2016, an elevator accident at the CJC resulted in serious injuries to a Sheriff's deputy. (*Id*.). On the weekend of the CJC elevator accident, Plaintiff offered to relieve Mr. Siegler at the accident site, but was refused. (*Id*. at ¶104). Plaintiff alleges that Mr. Dorris and HR Manager Anita Pirrone deliberately kept Plaintiff out of the information loop with respect to the accident. (*Id*.).

Shortly after the elevator accident, Plaintiff heard CEO Dobrowolski brag to Mr. Dorris that Defendant would be making a lot of money as a result of the accident. (*Id*. at ¶105). Plaintiff then saw CEO Dobrowolski and Mr. Dorris high-fiving each other. (*Id*.).

In a meeting on September 23, 2016, CEO Dobrowolski warned attendees to be careful regarding the Lontz brothers' relationship; to make it appear that there was no conflict of interest between the brothers and to state that a firewall was in place. (*Id*. at ¶103). Attendees were told to be careful about what was told to the City Department of Public Property Commissioner. (*Id*.). In September 2016, Mr. Siegler admitted that he and Mr. Jones routinely reset elevator control panels. (*Id*. at ¶107). Plaintiff admonished them never to do this as they were not licensed, certified, or trained elevator mechanics. (*Id*.). Between September 2016 and January 2017, Mr. Dorris held up funding to complete necessary weight load testing to the Triplex elevator systems because of purported money issues at Defendant. (*Id*. at ¶106).

On February 3, 2017, Plaintiff's employment with Defendant was terminated. (*Id*. at ¶112).

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id*. (citation and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to "'nudge [his or her] claims across the line from conceivable to plausible.'" *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

Defendant moves to dismiss Plaintiff's claims on the ground that Plaintiff has failed to allege sufficient facts to support each of the requisite elements of his alleged claims. Plaintiff disputes Defendant's contentions. This Court will address each of Plaintiff's claims.

## *Plaintiff's Racial Discrimination Claims*

At Counts I, II, IV and V of the amended complaint, Plaintiff asserts claims of racial discrimination under §1981,[2] Title VII,[3] the PHRA,[4] and the Philadelphia Ordinance.[5] These statutes prohibit an employer from discriminating against any individual with respect to employment and/or employment-related matters because of the individual's race. Here, Defendant contends that Plaintiff's racial discrimination claims fail because Plaintiff has not alleged sufficient facts for this Court to reasonably infer that Plaintiff's employment was terminated based on his race. This Court agrees.

---

[2] Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981.

[3] Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1).

[4] The PHRA provides: "[i]t shall be an unlawful discriminatory practice... (a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin . . . of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract." 43 Pa. Cons. Stat. §955.

[5] The Philadelphia Ordinance provides: "[i]t shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color . . . religion, national origin, ancestry, age . . ." Phila. Code §9-1103.

To assert a viable claim for employment discrimination under §1981, Title VII, the PHRA, and the Philadelphia Ordinance,[6] a plaintiff must allege facts sufficient to show that: (1) he is a member of a protected class; (2) he is qualified for the position or satisfactorily performed the duties required by his position; (3) he suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably, or the circumstances of the adverse employment action give rise to an inference of unlawful discrimination. *Wallace v. Federated Dep't Stores, Inc.*, 214 F. App'x 142, 144-45 (3d Cir. 2007) (§1981); *Groeber v. Friedman & Schuman, P.C.*, 555 F. App'x 133, 135 (3d Cir. 2014) (Title VII). "While similarly situated does not mean identically situated, the plaintiff must nevertheless be similar in all relevant respects." *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222-23 (3d Cir. 2009) (citation and internal quotation marks omitted). Allegations to consider when comparing a defendant's treatment of a plaintiff with its treatment of a similarly-situated non-member of the plaintiff's protected class include, but are not limited to, "that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 223 (citation and internal quotation marks omitted). In addition to direct comparator allegations, an inference of discrimination can also be supported by allegations "of similar racial discrimination of other employees, or [allegations] of discrimination from statements or actions by [the plaintiff's] supervisors suggesting racial animus." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir.

---

[6] Generally, the substantive elements for employment discrimination claims under §1981, Title VII, the PHRA, and the Philadelphia Ordinance are interpreted to be identical. *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009); *Thompson v. Kellogg's USA*, 619 F. App'x 141, 144 n.2 (3d Cir. 2015); *Darby v. Temple University*, 216 F. Supp. 3d 535, 543 (E.D. Pa. 2016).

2010); *see also Hobson v. St. Luke's Hosp. & Health Network*, 735 F. Supp. 2d 206, 214 (E.D. Pa. 2010).

Where a plaintiff alleges "reverse discrimination," *i.e.*, where a non-protected class is the target of the alleged discrimination, the first prong of the *prima facie* analysis is removed. *See Iadimarco v. Runyon,* 190 F.3d 151, 157–58 (3d Cir 1999) ("[A] plaintiff who brings a 'reverse discrimination' suit under Title VII should be able to establish a prima facie case in the absence of direct evidence of discrimination by presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of [his] race . . . .'") (citations omitted). Therefore, to sufficiently allege a *prima facie* "reverse discrimination" claim, a plaintiff must allege facts to show that: "(1) he or she was qualified for the position in question, (2) he or she suffered an adverse employment action, and (3) the evidence is adequate to create an inference that the adverse employment action [or less favorable treatment] was based on a trait protected by Title VII." *Koller v. Riley Riper Hollin & Colagreco,* 850 F. Supp. 2d 502, 517 (E.D. Pa. 2012) (quoting *Warenecki v. City of Philadelphia,* 2010 WL 4344558, at *5 (E.D. Pa. Nov. 3, 2010)).

Here, Plaintiff alleges that he was unlawfully terminated on account of his race (Caucasian) in violation of §1981, Title VII, the PHRA and the Philadelphia Ordinance. For a racial discrimination claim to survive a motion to dismiss, the plaintiff must assert "sufficient factual matter that permits the reasonable inference that [he] was terminated or retaliated against because of [his] race . . . ." *Golod*, 403 F. App'x at 702. Plaintiff's amended complaint, however, contains no factual allegations connecting Plaintiff's termination to his race. The amended complaint is also devoid of any allegations that similarly situated non-members of his protected class (non-Caucasians) were treated more favorably or any other facts that could

9

support an inference of racial discrimination regarding his termination. Such pleading deficiencies require dismissal of Plaintiff's race discrimination claims. *See Jenkins v. Polysciences, Inc.*, 2017 WL 1361689, at *3 (E.D. Pa. Mar. 29, 2017) (dismissing the plaintiff's Title VII claim for failure to plead any facts that would have raised a reasonable inference that the defendant terminated the plaintiff because of the plaintiff's race).

To support his claim of racial discrimination, Plaintiff points to comments made more than fourteen years before his termination as evidence of racial discrimination. Initially, Plaintiff highlights the comment by one of Defendant's *former* executives, who allegedly asked Plaintiff, *prior to his hiring*, if he "got along with minorities" and "black people." (Am. Compl. ¶12). He also points to another alleged comment made by an African-American third-party (not an employee of Defendant), who pointed to Plaintiff and another Caucasian employee during a meeting and stated "I think we're going to have problems with those two at the end of the table." (*Id*. at ¶14). These statements, however, cannot reasonably be construed to support an inference of unlawful discrimination that allegedly occurred fourteen years *after* the comments were made. Clearly, there is no nexus established between the comments made and the adverse action experienced by Plaintiff.

Plaintiff also alleges that Defendant's Human Resources Manager, Susan Laramore (an African American), exhibited "racial hostility" towards Plaintiff by "repeatedly attempting to undermine Plaintiff in his work." (*Id*. at ¶24). Apart from this bald allegation, however, Plaintiff does not assert any facts to support the "racial hostility" by Ms. Laramore. In similar fashion, Plaintiff baldly alleges that he "was the target of frequent jokes about his identified personal characteristics, as well as physical intimidation, verbal abuse and threats such that he became fearful of physical harm." (*Id*. at ¶26). Plaintiff does not, however, allege or point to any facts to

support this otherwise conclusory allegation, such as the source, timing, or substance of the alleged harassment. Taken together, these conclusory allegations are insufficient to sustain his race discrimination claim.

In addition, under precedent of the United States Court of Appeals for the Third Circuit, stray remarks by non-decision makers cannot support, on their own, an inference of discriminatory treatment. *Gomez v. Allegheny Health Services, Inc.*, 71 F.3d 1079, 1085 (3d Cir. 1995); *Carilli v. Mut. of Omaha Ins. Co*., 67 F. App'x 133, 135 (3d Cir. 2003) ("While Carilli presents evidence of numerous 'stray remarks by non-decision makers' at Mutual of Omaha . . . the evidence Carilli presents fails to link those remarks to the Violence Committee so as to reasonably support an inference of discriminatory intent and pretextual termination by that body."); *Walden v. Ga.-Pac. Corp*., 126 F.3d 506, 521 (3d Cir. 1997) ("We have generally held that comments by those individuals outside of the decision making chain are stray remarks, which, standing alone, are inadequate to support an inference of discrimination."); *Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 F.2d 509, 546 (3d Cir. 1992) (finding that to allow a series of stray remarks over a five year period to suffice to prove discriminatory motive would be to overstep the limits of Title VII).

Plaintiff contends that various fellow employees made discriminatory comments sometime during the course of his fourteen-year employment with Defendant. Plaintiff's factual allegations, however, do not provide any connection between the stray comments of these various non-decision makers and his termination of employment. Without such a connection, these stray remarks are insufficient to support an inference or claim of discrimination. [7]

---

[7] This Court also notes that any inference of discrimination is belied by the fact that Defendant hired Plaintiff in December 2002, where he worked for over fourteen years, transferred Plaintiff to the CJC to replace an African American Building Manager in 2007, and promoted him to a Project Manager position effective February 29, 2016, one year before his alleged termination on February 3, 2017.

Plaintiff's amended complaint is also devoid of any factual assertions that Defendant acted more favorably towards similarly situated, minority (non-Caucasian), Project Managers. As noted above, a plaintiff can meet his pleading obligation with respect to an inference of discrimination by alleging facts to show that similarly-situated non-members of the plaintiff's protected class were treated more favorably. "While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in 'all relevant respects.'" *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)); *see also Golod*, 403 F. App'x at 702 (dismissing complaint where plaintiff "did not provide any characteristics of those individuals who received the promotions to which she alleges she was entitled"). In assessing similarity, relevant factors include: "the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011) (citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) and *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006)). Here, Plaintiff alleges no facts with respect to any similarly situated employees or their treatment by Defendant. Plaintiff alleges only that members of "minority groups" were being "favored" during his employment. (Am. Compl. ¶¶27-28). Apart from this bald and conclusory allegation, Plaintiff does not allege any facts to identify his comparators, how they were similarly situated to Plaintiff, the manner in which Defendant favored these other minority employees, when this alleged conduct occurred, or by whom. In light of this lack of requisite factual allegations, the amended complaint does not

satisfy the fourth element.[8]  Consequently, Plaintiff's racial discrimination claims under §1981,

Title VII, the PHRA and the Philadelphia Ordinance are deficient and, therefore, are dismissed.

*Plaintiff's Ancestry/Ethnicity Discrimination Claims*
*Under §1981, the PHRA and the Philadelphia Ordinance*

Plaintiff asserts claims for ancestry/ethnicity discrimination premised on his Italian

ancestry/ethnicity.  Defendant moves to dismiss these ancestry/ethnicity discrimination claims on

similar grounds expounded for Plaintiff's racial discrimination claims.

Section 1981 prohibits unlawful discrimination based on race, ethnicity or ancestry, *see*

*Youssef v. Anvil Int'l*, 595 F. Supp. 2d 547, 559 (E.D. Pa. 2009), as does the PHRA and the

Philadelphia Ordinance.  *See* 43 Pa. Cons. Stat. §955; Phila. Code §9-1103.  A plaintiff asserting

a discrimination claim based on ancestry or ethnicity under §1981, the PHRA, or the

Philadelphia Ordinance must meet the same *prima facie* elements requirements of Title VII.  *See*

*Velez v. QVC, Inc*., 227 F. Supp. 2d 384, 407 n.21 (E.D. Pa. 2002); *Vandegrift v. City of Phila.*,

228 F. Supp. 3d 464, 486 n.206 (E.D. Pa. 2017).[9]

Like Plaintiff's racial discrimination claims, Plaintiff's ancestry/ethnicity discrimination

claims lack sufficient factual allegations to support the requisite causal connection between his

status as an Italian American and his termination.  To support such an inference, Plaintiff relies

upon various alleged comments by fellow employees regarding Italians.  These comments

include the alleged "negative comments regarding Italians" by Carmen Diaz Rosario, a Puerto

---

[8]     Notably, apart from citing to the bald allegation contained in paragraph 28 of the amended
complaint, Plaintiff offers no argument in his response to Defendant's motion to dismiss with respect to
how he has met his pleading burden with respect to similarly situated colleagues.

[9]     As noted, Title VII, the PHRA, and the Philadelphia Ordinance are interpreted co-extensively.
*Thompson v. Kellogg's USA*, 619 F. App'x 141, 144 n.2 (3d Cir. 2015); *Darby v. Temple University*, 216
F. Supp. 3d 535, 543 (E.D. Pa. 2016).  As such, this Court looks to the abundant case law addressing
discrimination claims under Title VII to assess Plaintiff's claims under §1981, the PHRA, and the
Philadelphia Ordinance.

Rican female and Manager for Philadelphia's Municipal Services Building, (*id.* at ¶19), and by Assistant Project Manager, Ed Siegler, who "made fun of Plaintiff's Italian heritage." (*Id.* at ¶22). Plaintiff does not identify the content of the alleged "negative comments" or jokes, when they were made, or whether they were made in the presence of any of Defendant's executive management or decision makers. Without this requisite information, no reasonable factfinder could infer or find any causal connection between these comments and the termination of Plaintiff's employment in February 2017.

Plaintiff also points to alleged "derogatory comments about Italians" made by Zachary Jones, an African American Maintenance Manager. (*Id.* at ¶20). Plaintiff alleges that Mr. Jones repeatedly used the derogative term "Mamaluke" to refer to Plaintiff and Italians in general, and stated that "all Italians are related and alike" and that they "even smell[ ] alike." (*Id.*). Plaintiff, has, again, not alleged any facts connecting these comments to the decision makers or to the decision to terminate Plaintiff's employment in February 2017. As such, there are no factual allegations from which one could reasonably infer any connection between the baldly alleged "negative" and "derogative" comments and Plaintiff's termination.

Moreover, as set forth above, stray remarks by non-decision makers cannot support, on their own, an inference of discriminatory treatment. *See* cases cited *supra* p. 11. Though Plaintiff has alleged that various fellow employees made ancestry/ethnicity discriminatory comments at times during his fourteen years of employment with Defendant, his factual allegations do not provide any connection between the stray comments of these various non-decision makers and his employment termination. Without some connection, these stray remarks by non-decision makers are insufficient to support the requisite inference of discrimination.[10]

---

[10] In addition, Plaintiff's amended complaint is also devoid of any factual allegations that Defendant acted more favorably towards similarly situated, non-Italian, Project Managers.

Consequently, Plaintiff's ethnicity/ancestry discrimination claims are deficient and, therefore, are dismissed.

<em>Plaintiff's Religious Discrimination Claims</em>

At Counts IV and V, Plaintiff asserts claims for religious discrimination under the PHRA and the Philadelphia Ordinance. Specifically, Plaintiff contends that he was unlawfully terminated because he is Catholic. Like Plaintiff's race and ancestry/ethnicity discrimination claims, Defendant moves to dismiss Plaintiff's religious discrimination claims on the basis that Plaintiff has not alleged facts sufficient to infer that his termination was because he is Catholic. This Court again agrees.

Title VII, the PHRA, and the Philadelphia Ordinance are interpreted co-extensively. *Thompson v. Kellogg's USA*, 619 F. App'x 141, 144 n.2 (3d Cir. 2015); *Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 543 (E.D. Pa. 2016).[11] As such, this Court looks to the abundant case law addressing discrimination claims under Title VII to assess Plaintiff's claims under the PHRA and the Philadelphia Ordinance. These provisions forbid employers from discriminating against an employee because of that employee's religion or religious beliefs. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, —— U.S. ——, 135 S. Ct. 2028, 2032 (2015); *Darby*, 216 F. Supp. 3d at 543; Phila. Code §9-1103.

To establish a claim for religion-based employment discrimination, employees may rely on either the theory of "disparate treatment" or "failure to accommodate." *Abramson v. William Paterson College of N.J.,* 260 F.3d 265, 281 (3d Cir. 2001); *Wallace v. City of Philadelphia*, No. 06 Civ. 4236, 2010 WL 1730850, at *6 (E.D. Pa. Apr. 26, 2010). Plaintiff purports to bring his

---

[11] Notably, Plaintiff does not assert a religious discrimination claim under Count II of his amended complaint, the only count which asserts discrimination claims pursuant to Title VII. Notwithstanding, religious discrimination claims under the PHRA and the Philadelphia Ordinance are analyzed under the same legal framework as religious discrimination claims asserted under Title VII.

claim under the "disparate treatment" theory. Under this "disparate treatment" theory, "the *prima facie* case and evidentiary burdens of an employee . . . mirror those of an employee alleging race or sex discrimination." *Abramson*, 260 F.3d at 281. To plead a *prima facie* case, a plaintiff must plead facts sufficient to show that: (1) he is a member of a protected class; (2) he suffered an adverse action; and (3) either similarly-situated non-members of the protected class were treated more favorably, or the circumstances of the adverse employment action give rise to an inference of unlawful discrimination. *Id.* In addition, because an "employee's religion . . . is often unknown to the employer," the Third Circuit has required "that employees [have] informed their employers of their religious beliefs prior to the alleged discriminatory action" in order to make out a *prima facie* case for discharge on account of religion. *Geraci v. Moody–Tottrup, Intern., Inc.,* 82 F.3d 578, 581 (3d Cir. 1996); *see also Morrison v. Access Services, Inc.*, 2014 WL 5286604, at *4 (E.D. Pa. Oct. 15, 2014). At this procedural posture, Plaintiff's allegations must "raise a reasonable expectation that discovery will reveal evidence" that Defendant knew about Plaintiff's protected religious status. *Twombly*, 550 U.S. at 556. The inference of knowledge from the allegations must be "plausible." *Iqbal*, 556 U.S. at 679. To withstand a motion to dismiss, in addition to alleging Defendant's knowledge of Plaintiff's religion, Plaintiff must also allege facts that give rise to a plausible inference of discrimination based on that knowledge. *Darby*, 216 F. Supp. 3d at 542.

To support the requisite inference of religious discrimination, Plaintiff primarily relies on the conduct of a fellow employee, Mr. Zachary Jones, who allegedly made a "host of negative and disparaging statements" about Plaintiff's religion. (Am. Comp. ¶20). As the only examples of such statements, Plaintiff alleges that Mr. Jones stated at some unspecified time that "all Catholics drink Jesus' juice," and that he "made fun of and criticized Plaintiff's maintenance of

personal religious objects in his own office space." (*Id.*). Plaintiff also baldly asserts that Mr. Jones' conduct was "consistent with the Anti-Catholic tone set by Mr. Karl Letterman, Project Manager of the Triplex." (*Id.*).

Just like the comments cited in support of Plaintiff's racial and ethnicity discrimination claims, this Court finds that these stray statements by fellow employees at some unspecified time over the course of Plaintiff's fourteen-year employment with Defendant cannot reasonably be construed to support an inference of unlawful discrimination when Plaintiff was terminated in February 2017.[12] *See* cases cited *supra* at p. 11. Further, there is no mention anywhere in Plaintiff's amended complaint that Plaintiff ever informed Defendant of his Catholicism prior to his termination or that Defendant had knowledge of it. Thus, Plaintiff has not pled sufficient facts from which a reasonable fact finder could infer that the decision-makers who ultimately terminated Plaintiff's employment were even aware of his religion.

Plaintiff's amended complaint is also silent with respect to Defendant's treatment of any similarly situated non-Catholics. As noted above, a plaintiff can meet his pleading obligation with respect to an inference of discrimination by asserting facts to show that similarly situated non-members of the plaintiff's protected class were treated more favorably. Plaintiff, however, alleges no facts with respect to any similarly situated employees or their treatment by Defendant. As such, Plaintiff has failed to establish facts sufficient to show that non-members of his protected class (non-Catholics) were treated more favorably. Accordingly, Plaintiff has not pled facts sufficient to establish a *prima facie* case that he was terminated and/or discriminated against because of his religion.

---

[12] This Court again notes that any inference of discrimination is also belied by the fact that Defendant hired Plaintiff in December 2002, and promoted him to a Project Manager position effective February 29, 2016, one year before his termination on February 3, 2017.

*Plaintiff's Title VII and ADEA Hostile Work Environment and Retaliation Claims*

In its motion to dismiss, Defendant argues that Plaintiff's amended complaint fails to allege facts sufficient to show that a hostile work environment was created or caused by Defendant's actions which related to Plaintiff's race and/or age. In response, Plaintiff concedes that he has not asserted a cause of action for either hostile work environment or retaliation, but has merely alleged these facts to support his general claims of employment discrimination. (*See* ECF 11, at p. 4 n.1). Based on Plaintiff's response, this Court will deem any claims for hostile work environment and retaliation under Title VII and the ADEA withdrawn.

*Plaintiff's Age Discrimination Claims*

At Counts III, IV, and V of the amended complaint, Plaintiff asserts age discrimination claims under the ADEA,[13] the PHRA, and the Philadelphia Ordinance. Specifically, Plaintiff alleges that he was unlawfully terminated because of his age. Defendant has moved to dismiss these claims on the basis that Plaintiff has not adequately pled facts to support the requisite *prima facie* elements. This Court disagrees.

To plead a viable age discrimination claim, a plaintiff must allege facts sufficient to show that: (1) he is forty years of age or older; (2) the defendant took an adverse employment action against him; (3) he was qualified for the position from which he was removed; and (4) he "was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir. 1995); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995); *Homel v. Centennial Sch. Dist.*,

---

[13]     The ADEA provides that: "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. §623.

836 F. Supp. 2d 304, 316 (E.D. Pa. 2011) (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)).[14]

This Court finds that Plaintiff has plausibly stated an age discrimination claim against Defendant because he has alleged facts to support that he was: sixty years old and, thus, within the protected class; terminated from a position for which he was qualified, and was replaced by an individual who was younger in age. *See Haynos v. Siemens Water Technologies Corp.,* 2012 WL 5834374, at *1 (W.D. Pa. Nov.16, 2012) (denying motion to dismiss an age discrimination claim where plaintiff pled that he was within the protected class, was terminated and then replaced by someone younger); *see also Stabile v. Allegheny Ludlum, LLC,* 2012 WL 3877611, at *5–7 (W.D. Pa. Sept.6, 2012) (same). This Court also agrees that an age discrimination claim may be inferred from Plaintiff's assertions that Defendant's CEO asked him how old he was and how much longer he wanted to work approximately one month before his termination. *See e.g., Romantine v. CH2M Hill Engineers, Inc.,* 2010 WL 5419017, at *13 (W.D. Pa. Nov. 24, 2010) ("Courts have also recognized, however, that some retirement inquiries are so unnecessary and unreasonable, that such inquiries may constitute evidence of age discrimination, especially when placed in the context of all facts and circumstances in a particular case."); *Wargats v. Pittsburgh Technical Inst.,* 2007 WL 81056, at *5 (W.D. Pa. Jan.8, 2007) (same).

In addition, Plaintiff's claim is further supported by allegations that his replacement was younger than him, a fact which is also sufficient to create a reasonable inference that Plaintiff

---

[14]     The United States Court of Appeals for the Third Circuit has stated "that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fasold,* 409 F.3d at 184 n.8 (quoting *Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 567 (3d Cir. 2002)). Finding no such distinguishing language, the Third Circuit has interpreted the relevant provisions of the ADEA and the PHRA "as applying identically . . . and as being governed by the same set of decisional law." *Id.* (citing *Fogleman,* 283 F.3d at 567).

was discriminated against in violation of the ADEA.  *See Ullrich v. United States Sec'y of Veterans Affairs,* 457 F. App'x 132, 138 n. 3 (3d Cir. 2012) (citing *Hill v. Borough of Kutztown,* 455 F.3d 225, 247 (3d Cir. 2006)) (age discrimination may be inferred from the fact "that a plaintiff's replacement was sufficiently younger to permit a reasonable inference of age discrimination.").  As such, Defendant's motion to dismiss Plaintiff's age discrimination claims is denied.

*Plaintiff's Whistleblower Claims*

At Count VI, Plaintiff asserts a claim for violation of the Pennsylvania Whistleblower Law, 43 Pa. Cons. Stat. §1421, *et seq*.  Under the Pennsylvania Whistleblower Law:

> [n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 Pa. Cons. Stat. §1423(a).  The Whistleblower Law prohibits an employer from retaliating against an employee because of that employee's report of wrongdoing or waste by the employer, and an employee alleging a violation may bring a civil action for injunctive relief, or damages, or both.  *Id.*; *see also Bailets v. Pennsylvania Turnpike Com'n*, 123 A.3d 300, 307 (Pa. 2015).  "Wrongdoing" is defined as:  "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 Pa.

Con. Stat. §1422; *see also Golaschevsky v. Dep't of Environmental Protection,* 720 A.2d 757, 759 (Pa. 1998).[15]

Defendant argues that Plaintiff's claim should be dismissed because he failed to specifically identify the statute or regulation that Defendant allegedly violated and failed to show that Defendant took any retaliatory action against him following Plaintiff's alleged complaints of wrongdoing. In support of its arguments, however, Defendant relies exclusively on decisions in which the courts were addressing a defendant's motion for summary judgment rather than a defendant's motion to dismiss, as in this case. When addressing motions to dismiss Whistleblower claims, district courts in Pennsylvania have held that a plaintiff need not plead the precise statute or regulation that the defendant allegedly violated by way of its wrongdoing. *See, e.g., Stoneback v. ArtsQuest*, 2012 WL 4963624, at *2 (E.D. Pa. Oct. 17, 2012) (holding that "[w]ith respect to pleading wrongdoing properly, Plaintiff need only plead facts sufficient to permit a reasonable inference that Defendants violated some statute, etc., she need not specifically identify it."); *Keefer v. Durkos*, 371 F. Supp. 2d 686, 692 (E.D. Pa. 2005) ("the Court finds no reason for the Plaintiff to enumerate specific laws within her Complaint to withstand the Defendants' Motion to Dismiss."); *Bielewicz v. Penn-Trafford Sch. Dist*., 2011 WL 1486017, at *5 (W.D. Pa. Feb. 9, 2011). Rather, a plaintiff need only plead facts that could be reasonably inferred as setting forth an alleged report of the statutorily-defined "wrongdoing" or "waste." As such, Defendant's argument that Plaintiff must plead the specific statute and/or regulation is misplaced.

---

[15] The statute subsequently defines "waste" as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." 43 Pa. Cons. Stat. §1422. Notably, Defendant makes no argument in its motion to dismiss regarding the adequacy of the allegations of Plaintiff's reports of "waste" in the amended complaint. In the absence of any challenge to Plaintiff's Whistleblower claims premised on Plaintiff's "waste" allegations, Plaintiff's Whistleblower claims must survive.

Here, Plaintiff has alleged that for a period of years leading up to his termination, he made numerous reports to management and his superiors regarding a lack of preventive maintenance and serious deficiencies in the maintenance of the elevators at the Triplex buildings that were under his management. (Am. Comp. ¶¶91-102). These alleged reports/complaints occurred at various times between October 2013 and April 2016. (*Id*.). Many of Plaintiff's alleged reports included his complaints with respect to the maintenance work or lack of necessary work being performed by Defendant's elevator service contractor, Schindler. (*Id*.). Schindler was eventually terminated in July 2016, a month before an elevator crash on August 4, 2016, at the CJC which resulted in the paralysis of a Sheriff's deputy. (*Id*. at ¶102). Taking these allegations as true, these facts, as pled, are sufficient to permit a reasonable inference that Plaintiff made reports of actual violation(s) of some statute(s) or regulation(s). Under the circumstances, Plaintiff has met the pleading burden of reporting a statutorily-defined "wrongdoing" and/or "waste."

Defendant also argues that Plaintiff has not alleged facts sufficient to infer retaliation. In particular, Defendant argues that the lack of temporal proximity between Plaintiff's alleged reports of wrongdoing and his termination in February 2017 refutes any reasonable inference that he was terminated in retaliation for his reports. While temporal proximity or lack thereof is an appropriate consideration for the requisite causation inquiry, Defendant's arguments are more appropriately decided at the summary judgment stage. Plaintiff has alleged that he had made numerous reports about deficiencies in the maintenance and inspection of the elevators, and that he was kept isolated from any post-accident investigation. When considering these allegations in context, the timing of Plaintiff's alleged termination is significant in that it occurred five months after a mishap in one of the buildings that Plaintiff alleged to had reported problems about for

years.  Plaintiff has sufficiently pled facts from which retaliation can be inferred.  Therefore, Defendant's motion to dismiss this claim is denied.

<u>*Plaintiff's Common Law Wrongful Termination/Discharge Claim*</u>

At Count VII, Plaintiff asserts a claim for "violation of the Pennsylvania common law for the tort of firing contrary to public policy."  (Am. Comp. at Count VII).  The facts underlying this purported claim are the same as those underlying Plaintiff's Whistleblower claim. Defendant argues that this claim should be dismissed because it is preempted by the statutory remedies available under the Whistleblower Law.  This Court agrees.

It is well-settled that Pennsylvania law does not recognize a common law cause of action for violating public policy when there is an existing statutory remedy.  *Preobrazhenskaya v. Mercy Hall Infirmary,* 71 F. App'x 936, 941 (3rd Cir. 2003); *Wolk v. Saks Fifth Avenue, Inc.,* 782 F.2d 223, 224 n.3 (3rd Cir. 1984) ("The availability of a [statutory] remedy precludes other common law remedies even where the statute is not invoked."); *Bruffett v. Warner Communications, Inc.,* 692 F.2d 910, 918–19 (3d. Cir. 1982); *Jacques v. AKZO International Salt., Inc.,* 619 A.2d 748, 753 (Pa. Super. Ct. 1993) (citing *Clay v. Advanced Computer Applications,* 559 A.2d 917, 918 (Pa. 1989)) ("It is well-settled that the courts will not entertain a separate common law action for wrongful discharge where specific statutory remedies are available.").  "It is the existence of a statutory claim, and not the success of one that determines whether a common law claim is preempted."  *DeMuro v. Philadelphia Hous. Auth.,* 1998 WL 962103, at *5 (E.D.  Pa. Dec. 21, 1998) (quoting *Jaques*, 619 A.2d at 753).

Courts in this district have dismissed common law wrongful discharge claims when a plaintiff has also alleged a claim under the Whistleblower Law.  *See, e.g., Rinehart v. Mt. Penn Borough Mun. Auth.,* 2002 WL 32341795, at *11 (E.D. Pa. Dec. 19, 2002) (dismissing common

law wrongful discharge claim because "[t]he Pennsylvania legislature appears to have enacted the Whistleblower Law specifically to protect the interest of public employees and the public at large in circumstances such as those alleged, and [the plaintiff] had an appropriate statutory remedy"); *Katzenmoyer v. City of Reading,* 158 F. Supp. 2d 491, 503 (E.D. Pa. 2001) (dismissing a wrongful discharge claim because the claim might fall under the Whistleblower Law); *DeMuro,* 1998 WL 962103, at *5 (granting a motion to dismiss a common law wrongful discharge claim because the plaintiff had a statutory remedy under the Whistleblower Law); *Freeman v. Mckellar,* 795 F. Supp. 733, 742 (E.D. Pa. 2002) (same); *see also Perry v. Tioga County*, 649 A.2d 186, 189 (Pa. Commw. Ct. 1995) (same); *cf.*, *Preobrazhenskaya*, 71 F. App'x at 941 (affirming grant of summary judgment as to common law discharge claim because the plaintiff had an available statutory remedy).

Plaintiff has alleged a Whistleblower Law claim in the amended complaint. Therefore, construing the allegations as true, Plaintiff has an appropriate statutory remedy under the Whistleblower Law and, thus, may not also plead a common law wrongful discharge claim. Accordingly, Count VII of the amended complaint is dismissed.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is granted, *in part*, and Plaintiff's race discrimination claims at Counts I, II, IV, and V, Plaintiff's race, religion, and ethnicity/ancestry discrimination claims at Counts IV and V, and Plaintiff's common law claim for unlawful termination/discharge at Count VII are dismissed. Defendant's motion to dismiss is denied as to Plaintiff's age discrimination claims at Counts III, IV, and V, and his Whistleblower claim at Count VII. In light of Plaintiff's response, Plaintiff's claims for hostile work

environment and retaliation are deemed withdrawn.  An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.